SEAN A. O'KEEFE – State Bar No. 122417
**OKEEFE & ASSOCIATES**
**LAW CORPORATION, P.C.**
26 Executive Park, Suite 250
Irvine, CA 92614
Telephone: (949) 334-4135
Fax: (949) 209-2625
Email: sokeefe@okeefelawcorporation.com
Counsel to Elliot B. Lander, defendant

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| GLENROY COACHELLA, LLC<br><br>Debtor. | Case No. 2:21-bk-11188-BB<br><br>Adv. No. 2:23-ap-01080-BB<br><br>Chapter 7 |
| RICHARD A. MARSHACK, solely in his capacity as Chapter 7 Trustee for the bankruptcy estate of Glenroy Coachella, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>ASR DEVELOPMENT CO, a California corporation; DESERT MEDICAL PROPERTIES, INC., a California corporation; ABRAHAM STUART RUBIN, an individual; JOSEPH RUBIN, an individual; DR. ELLIOT B. LANDER, an individual; and GARY STIFFELMAN as trustee for the STIFFELMAN FAMILY TRUST,<br><br>Defendants. | **DEFENDANT ELLIOT B. LANDER'S NOTICE OF MOTION AND MOTION TO DISMISS ALL CLAIMS IN COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); AND DEMAND FOR JURY TRIAL AS TO ANY SURVIVING CLAIMS**<br><br>**DATE**: April 12, 2023<br>**TIME**: 10:00 a.m.<br>**PLACE**: Courtroom 1539 of the Edward R. Roybal Federal Building and Courthouse at 255 E. Temple Street, Los Angeles, California |

1  PLEASE TAKE NOTICE that on April 12, 2023 at 10:00 a.m. the defendant, Dr. Elliot B. Lander ("Dr. Lander" or "Defendant"), will appear in Courtroom 1539 of the Edward R. Roybal Federal Building and Courthouse at 255 E. Temple Street, Los Angeles, California, and will move, and hereby moves, the Court for an order dismissing all claims for relief in the complaint filed against Dr. Lander (docket 1) (the "Complaint") in this adversary proceeding, and for such further relief as the Court deems just and proper.

This motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently filed supporting Declarations of Dr. Lander (the "Lander Decl."), and Sean A. O'Keefe (the "OKeefe Decl."), the pleadings and documents on file in this case, and such other evidence and argument as is presented at the time of the hearing.

PLEASE TAKE FURTHER NOTICE that any party in interest intending to oppose the relief sought in the Motion may file and serve an answering memorandum of point and authorities, declarations and copies of all evidence on which the responding party intends to rely upon not later than fourteen (14) days prior to the hearing date. Failure to timely file and serve any responsive papers may result in the Court failing to consider the same.

DATED: March 20, 2023

OKEEFE & ASSOCIATES
LAW CORPORATION, P.C.

/s/ Sean A. O'Keefe
By: _____
Sean A. O'Keefe, counsel
to Dr. Elliot B. Lander, defendant

2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I    SUMMARY OF MOTION

In the Complaint, Richard Marshack, in his capacity as Chapter 7 trustee (the "Trustee") for Glenroy Coachella, LLC (the "Debtor"), contends Dr. Lander received a transfer from the Debtor in the amount of $120,000 on April 17, 2018 (the "Transfer"). In the First Claim for Relief alleged in the Complaint the Trustee contends the Transfer is avoidable as an actually fraudulent transfer pursuant to California Civil Code § 3439.04(a)(1). This claim for relief should be dismissed on the ground it fails to satisfy the specificity standard set forth in Federal Rule of Civil Procedure 9(b).[1] This claim also fails for a more obvious reason: This payment repaid a $120,000 loan advanced to the Debtor by Dr. Lander on March 12, 2018, thirty-six days before the Transfer was made. The Trustee was provided a bank statement before he filed the Complaint reflecting this incoming wire to the Debtor. (See ex. A, Lander Decl.).

In the Second Claim for Relief, the Trustee contends the Transfer is constructively avoidable transfer under California Civil Code §§ 3439.04(a)(2) and 3439.05. This claim fails to state a claim for the second reason stated above. The Trustee was provided evidence, in the form of a bank record, establishing that Dr. Lander wired $120,000 to the Debtor on March 12, 2018. The repayment of this exact sum thirty-six days later renders it unavoidable. In re Prejean, 994 F.2d 706, 707 (9th Cir. 1993)("It is undisputed that satisfaction of an antecedent debt that is not time-barred constitutes "value" for purposes of the CFTA. *See* Cal.Civ.Code § 3439.03").

The Trustee's Third and Fourth Claims for Relief are dependent upon, and therefore fall with the First and Second Claims For Relief.

---

[1] See Screen Cap. Int'l Corp. v. Libr. Asset Acquisition Co., 510 B.R. 248, 257 (C.D. Cal. 2014) ("Claims of avoidance and recovery of an actual fraudulent transfer are subject to the heightened pleading standards of Rule 9(b)."); SBC Berlin 2012-2014, Ltd. v. Babywatch, Inc., No. 18-CV-07611-EDL, 2019 WL 13203776, at *13 (N.D. Cal. Oct. 10, 2019); Lachapelle v. Kim, No. 15-CV-02195-JSC, 2015 WL 7753235, at *4–7 (N.D. Cal. Dec. 2, 2015) (applying Rule 9(b) to section 3439.04(a)(1) claim but not to sections 3439.04(a)(2) and 3439.05 claims); Kelleher v. Kelleher, No. 13-CV-05450-MEJ, 2014 WL 94197, at *4–6 (N.D. Cal. Jan. 9, 2014) (same); Sunnyside Dev. Co. LLC v. Cambridge Display Tech. Ltd., No. C 08-01780 MHP, 2008 WL 4450328, at *5, 8–9 (N.D. Cal. Sept. 29, 2008) (same).

The Trustee's Fifth Claim for Relief seeks to recover the "DOT Transfer" from an unspecified "defendant" based upon an unjust enrichment theory. The term "DOT Transfer" is not defined or otherwise referred to in the Complaint. Accordingly, the Fifth Claim for Relief fails to state a claim upon which relief can be granted.[2]

For the foregoing reasons, the claims against Dr. Lander should be dismissed.

## II    SUMMARY OF RELEVANT FACTS

The facts relevant to this Motion are simple and indisputable. On March 12, 2018, Dr. Lander made a $120,000 loan to the Debtor via a wire transfer of this same date. *The Trustee was a provided a copy of the bank record confirming this wire before the Complaint was filed.* On April 17, 2018, thirty-six (36) days after this loan was made, the Debtor repaid it without interest via the Transfer. This was a dollar-for-dollar exchange and as such, it is unavoidable. In re Prejean, 994 F.2d 706, 707 (9th Cir. 1993)("It is undisputed that satisfaction of an antecedent debt that is not time-barred constitutes "value" for purposes of the CFTA. *See* Cal.Civ.Code § 3439.03"). Although the foregoing facts are dispositive of the Claims alleged in the Complaint, in the paragraphs below Dr. Lander has addressed certain allegations that are obtuse, misleading or incorrect.[3]

As of the February 15, 2021 petition Date (the "Petition Date"), the Debtor's owned a 70.5% interest in a thirty-seven-acre property located at the corner of Avenue 48 and Van Buren Street in Coachella, California (the "Property"). The remaining ownership interests in the Property were held as follows: Force Rubin, LLC - 21.2115%, Force Rubin 2, LLC - 3.7885%, Coachella Resorts, LLC - 4.5%. At the request of the Trustee, Force Rubin, LLC, Force Rubin 2, LLC, and Coachella Resorts, LLC transferred their ownership interest in the Property to the Trustee, and the entirety was then sold pursuant to an order of this Court.

As the Trustee is aware, and as his filings in this Court confirm, the Dr. Lander never owned any interest in the Property, he has never owned any interest in the Debtor, and he has

---

[2] This claim appears to relate to another case.

[3] The facts in this narrative appear in pleadings filed in this case by the Trustee, and in recorded public records. As the authorities cited herein indicate, the Court may consider this evidence in this procedural context.

2

never been employed by the Debtor. Dr. Lander has also never owned any interest in any property "neighboring" the Property as alleged in the Complaint.

Dr. Lander's limited relationship with the Property and the Debtor is two steps removed. He is the Trustee of "The Elliot Lander Separate Property Trust dated December 2, 2009" (the "Separate Property Trust"), which is the sole member of Coachella Resorts, LLC. The latter entity owns a *4.5% interest* in the Property. Dr. Lander also owns a *4.5% interest* in Quonset Partners, LLC, an entity that owns a parcel of land adjoining the Property. A. Stuart Rubin ("Rubin") and Gary Stiffelman ("Stiffelman") own the remaining 95.5% of Quonset.

The Trustee's contention that Dr. Lander "paid no consideration in connection with his purported investment in the Hotel Parcels" is true, but unremarkable, *since Dr. Lander never made an investment in the Hotel Parcels.* As explained above, Coachella Resorts, LLC acquired this 4.5% interest, using funds advanced by the Separate Property Trust. Coachella Resorts, LLC paid $875,000 for this interest. This purchase price is confirmed by the $962.50 documentary transfer tax figure on the deed transferring title to Coachella Resort. (See, Lander Decl., ex. B). This tax is $1.10 per $1,000, which means the purchase price was $875,000 ($962.50/1.10 = 875 x 1000 = $875,000 purchase price).

Dr. Lander is the owner of Desert Medical Properties, LLC ("DMP") as alleged in the Complaint. However, *DMP, like Dr. Lander, has never owned any interest in the Debtor or in the Property*. DMP's past relationship with the Debtor is also limited. In 2017, DMP sold a medical building in Indio, California and used the net proceeds, $832,439.61, along with $1,892,572.00 of cash advanced by Dr. Lander and DMP—a total of $2,725,000—to acquire an interest in a property located at 48100 Van Buren Street, Coachella, California (the "Dispensary Property"). This property was acquired through a Section 1031 (IRC) exchange.

Pursuant to the 1031 escrow structure, Force-DMP, LLC, not DMP, acquired title to the Dispensary Property from the Debtor, for the sum of $2,725,000 referenced above. DMP then acquired the 100% of the ownership interest in Force-DMP, LLC from Force Financial, LLC, the "Exchange Accommodation Titleholder". The deed transferring title to the Dispensary Property

3

from the Debtor to Force-DMP, LLC reflects a $2,997.50 documentary transfer tax. This confirms that the purchase price was in fact $2,725,000 ($2,997.50 tax / 1.10 = 2,725 x 1,000 = $2,725,000). (See Lander Decl., ex. C).

The Complaint alleges that Dr. Lander was a friend of A. Stuart Rubin ("Rubin") in 2018, the party that controlled the Debtor prepetition. This is true. It was Rubin who induced Dr. Lander, a urologist with no experience in hotel projects, to invest the Separate Property Trust's funds in the Property, through Coachella Resorts, LLC. This was a 4.5% passive investment, and in retrospect, a very bad one. None of the relationships described above makes Dr. Lander a statutory "insider" of the Debtor under 11 U.S.C. § 101(31) and case law in this circuit confirms he is also not a non-statutory insider. See In re Enter. Acquisition Partners, Inc., 319 B.R. 626, 632–33 (B.A.P. 9th Cir. 2004).

### III    LEGAL AUTHORITIES

#### A.    The Standard of Law Applicable To The Motion.

To state a viable claim for relief, a plaintiff must plead factual allegations with sufficient clarity and specificity to state a right to relief "above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1968-69 (2007); see also 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). A complaint based upon a "formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. Id. Moreover, to the extent a claim "sounds in fraud", such as the claims alleged in this case, the allegations therein must satisfy the higher pleading standard set forth in Federal Rule of Civil Procedure 9(b). Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103–04 (9th Cir. 2003); see also Anderson v. Clow (In re Stac Elecs. Sec. Litig.), 89 F.3d 1399, 1404–05 (9th Cir.1996) ("We now clarify that the particularity requirements of Rule 9(b) apply to claims brought under Section 11 [of the 1933 Securities Act] when, as here, they are *grounded in fraud*.").

In evaluating this Motion, the Court may look not only to the Complaint, but also to matters of public record. See United States v. Sierra Pac. Indus., Inc., 862 F.3d 1157, 1171 (9th Cir. 2017) (holding that trial court may properly consider prior court proceedings before that trial court in a motion to dismiss). The Court may also consider documents "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006). Therefore, the "court may consider exhibits to the complaint without converting a motion to dismiss into a motion for summary judgment." Hazleton v. Alameida, 358 F. Supp. 2d 926, 928 (C.D. Cal. 2005).

### B.    The First Claim for Relief Should Be Dismissed.

In the First Claim for Relief, the Trustee contends the Transfer to Dr. Lander was made with the intent to "hinder, delay or defraud" the Debtor's creditors. A well-reasoned body of cases in this Circuit hold that claims alleged under Section 3439.04(a)(1) "sound in fraud" and therefore the specificity requirement in Federal Rule of Civil Procedure 9(b) applies. See Exec. Risk Specialty Ins. Co. v. Rutter Hobbs & Davidoff Inc., No. CV1104828GAFFFMX, 2012 WL 12884679, at *7 (C.D. Cal. July 20, 2012); Bond Safeguard Ins. Co. v. Kramer, No. 2:14-CV-01896-JAM, 2015 WL 1021444, at *1 (E.D. Cal. Mar. 9, 2015)("Rule 9(b) applies to section 3439.04 but not to section 3439.05."); Kelleher v. Kelleher, 2014 WL 94197, at *5–*6 (N.D.Cal. Jan.9, 2014); Sunnyside Dev. Co. LLC v. Cambridge Display Tech. Ltd., 2008 WL 4450328, at *6, *8, *9 (N.D.Cal. Sept.29, 2008); SBC Berlin 2012-2014, Ltd. v. Babywatch, Inc., No. 18-CV-07611-EDL, 2019 WL 13203776, at *13 (N.D. Cal. Oct. 10, 2019); Lachapelle v. Kim, No. 15-CV-02195-JSC, 2015 WL 7753235, at *4–7 (N.D. Cal. Dec. 2, 2015) (applying Rule 9(b) to section 3439.04(a)(1) claim but not to sections 3439.04(a)(2) and 3439.05 claims); Donne v. Hardt, No. 1:10-CV-2341 AWI JLT, 2011 WL 3925129, at *6 (E.D. Cal. Sept. 7, 2011) ("Fed. Rule Civ. Proc. 9(b) requires that, when averments of fraud are made, the circumstances constituting the alleged fraud must be "specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong." Though the substantive elements of

5

fraud are set by a state law, those elements must be pled in accordance with the requirements of Rule 9(b). See *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1103 (9th Cir.2003). The claims appear to fit the language of Cal. Civ.Code § 3439.04(a)").

As the District Court explained in <u>In re CT-1 Holdings, Inc.</u>, No. 2:10-BK-19927-BR, 2014 WL 5475216, at *3 (C.D. Cal. Oct. 27, 2014):

> This claim, which alleges fraud outright, requires details beyond those required by Rule 8(a) and *Twombly/Iqbal. Screen Capital Int'l Corp. v. Library Asset Acquisition Co.,* 510 B.R. 266, 274 (C.D.Cal.2014); *see also Nishibun v. Prepress Solutions, Inc.,* 111 F.3d 138 (9th Cir.1997) (unpublished table decision) ("A complaint alleging a violation of [§ 3439.04(a) ] must ... comply with Fed.R.Civ.P. 9(b)'s particularity requirements."); *see generally* Fed.R.Civ.P. 9(b) (subjecting fraud claims to a heightened pleading standard). **To make this claim, SCIC would be required to plead "the who, what, when, where, and how of the misconduct charged,"** *Cafasso v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1055 (9th Cir.2011) (internal quotation marks and citations omitted); that is, "the times, dates, places, benefits received, and other details of the alleged fraudulent activity," *Neubronner v. Milken,* 6 F.3d 666, 672 (9th Cir.1993).

<u>Id.</u> (emphasis added). *To satisfy Rule 9(b) as to the First Claim for Relief, the Trustee was required to specify why* **the particular transfer at issue**—*the $120,000 paid to Dr. Lander on April 17, 2018— was made with the intent to "hinder, delay or defraud" the creditors of the Debtor who were extant at that point in time.* The allegations in the Complaint fail to satisfy this standard.

In subsection (b) of 3439.04, the statute lists a series of "factors" that should be considered when "determining actual intent under paragraph (1) of subdivision (a)." These factors include the following: (1) whether the transfer or obligation was to an insider, (2) whether the debtor retained possession or control of the property transferred after the transfer, (3) whether the transfer or obligation was disclosed or concealed (4) whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit, (5) whether the transfer was of substantially all the debtor's assets, (6) whether the debtor absconded, (7) whether the debtor removed or concealed assets, (8) whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred, (9) whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred, (10) whether the transfer occurred shortly before or shortly after a

substantial debt was incurred, and (11) whether the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor. *None of these factors exist in this case.*

In the Complaint, the Trustee has attempted to bring into play the insider factor cited in Section 3439.04(b). However, this attempt fails due, <u>inter alia</u>, to a lack of specificity and a lack of supporting facts. In paragraph 18 of the Complaint, the Trustee alleges:

> 18. Plaintiff is informed and believes that as of approximately April of 2018, Dr. Elliot B. Lander ("Lander") purported to be an investor of Debtor holding a 4.5% interest in parcels of land neighboring the Dispensary Property where Debtor intended to develop a hotel (the "Hotel Parcels"). Plaintiff is further informed and believes that Lander paid no consideration to Debtor in connection with his purported investment in the Hotel Parcels.

This intentionally obtuse allegation does not satisfy the Rule 9(b) standard. Why not simply allege that Dr. Lander is an investor in the Debtor? *The answer is because the Trustee knows he is not. Dr. Lander does not hold, and has never held any interest in the Debtor.* The Trustee also knows that the Dr. Lander has never owned a "4.5% interest in parcels of land neighboring the Dispensary Property where Debtor intended to develop a hotel (the "Hotel Parcels"). He has advised this Court of this fact many times in pleadings of record in this case. (See ex. A, OKeefe Decl.).

In paragraph 20 of the Complaint, the Trustee contends that Rubin and Dr. Lander are "friends", and Dr. Lander's owns DMP. Even if these allegations were true, they would not make Dr. Lander an insider of the Debtor under 11 U.S.C. § 101(31). <u>See</u> <u>In re Enter. Acquisition Partners, Inc.</u>, 319 B.R. 626, 632–33 (B.A.P. 9th Cir. 2004). As stated above, Dr. Lander has never owned the Dispensary Property. It was a acquired for $2,725,000, as indicated on the deed, by Force-DMP, LLC, which in turn was owned by DMP. The closing statement for this five year old acquisition, which was provided to the Trustee, confirms this fact. (See ex. D, Lander Decl.) Query what aspect of this non-ownership relationship satisfies the **"the who, what, when, where, and how" requirements with respect to the misconduct charged.** <u>See</u> <u>Cafasso v. Gen. Dynamics C4 Sys., Inc.</u>, 637 F.3d 1047, 1055 (9th Cir.2011) (emphasis added).

7

As for the allegation of friendship, this does not confer insider status. In re Reinbold, 182 B.R. 244 (D.S.D.1995) ("friendship" alone is insufficient to confer insider status; creditor needs to dominate the debtor in order to rise to the insider level). Moreover, a "friendship" that inflicts millions of dollars in losses upon the purported beneficiary of this relationship does not move the specificity needle as to the misconduct charged *with respect to the Transfer*.

The Trustee's reference to Dr. Lander's ownership of DMP, as explained above, also does not provide any specificity or clarity with respect to the "misconduct charged", to wit, the contention that the transfer of $120,000 to Dr. Lander was intended to "hinder, delay or defraud" creditors. DMP sold a medical building in Palm Desert and used the proceeds, plus cash contributions by DMP, to acquire a parcel of property, through a third party entity, from the Debtor, for $2,725,000. How does this transaction relate in any respect to the $120,000 Transfer at issue in this case?

In In re Enter. Acquisition Partners, Inc., 319 B.R. 626 (B.A.P. 9th Cir. 2004), the Bankruptcy Appellate Panel for this circuit (the "BAP") was asked to decide whether the bankruptcy court was correct in deeming that the defendant, Miller Avenue Professional and Promotional Services, Inc. ("MAPPS"), was a per se insider of debtor, because MAPPS was wholly owned by an insider of debtor (an officer). The BAP held MAPPs was not and reversed the bankruptcy court. As the BAP explained:

> The court's expansion of the list of per se insiders in § 101(31) to include an insider's solely owned corporation cannot be justified by the language of the statute. The court's task is to determine congressional intent; "[t]he starting point ... is the existing statutory text [.]" (Citation omitted). Where the statutory language is clear, the court must apply it by its terms, unless to do so would lead to absurd results. (citation omitted). There is no way reasonably to read the term "relative of a general partner, director, [or] officer" as also including corporations that are wholly owned by a relative of a general partner, director, or officer. Had Congress wanted to extend per se insider status to insiders of insiders, it knew how to do it.

In re Enter. Acquisition Partners, Inc., 319 B.R. 626, 632 (B.A.P. 9th Cir. 2004). In this case, the insider relationship that the Trustee is seeking to create is substantially more attenuated than the relationship presented in Acquisition Partners. Dr. Lander has never owned any interest in the Debtor, and he has never been employed by the Debtor. As explained above, his relationship to the Property being developed was two entity steps removed and the percentage ownership held by

8

Coachella Resorts was only 4.5%. Dr. Lander, DMP and Coachella are also not non-statutory insiders, because they never had any control over the Debtor. Acquisition Partners, Inc., 319 B.R. 626, 633 ("We conclude that the bankruptcy court erred in expanding the statutory list of per se insiders of a corporate debtor to include corporations that are solely owned by persons who qualify as per se insiders. Although the statutory definition is not limiting, those who do not qualify as per se insiders because they are not within the categories specifically listed in the definitional statute can qualify as insiders only if they meet the test for non-statutory insiders, which requires some showing of control of the debtor.")

To satisfy the specificity burden imposed upon by Rule 9(b), the Trustee has to allege facts establishing that the $120,000 payment to Dr. Lander on April 17, 2018 was intended to "hinder, delay or defraud" creditors. Amorphous allegations referring to unrelated transactions or to ownership relationship that do not exist, or that are irrelevant, does not satisfy this burden. Accordingly, this claim should be dismissed.

The Trustee is also not at liberty to ignore the obvious. Prior to filing the Complaint, Dr. Lander's counsel provided him a bank record confirming what the Trustee already knew: Dr. Lander wired $120,000 to the Debtor from Pacific Premier Bank on March 12, 2018. (See ex. A, Lander Decl.) This exact sum was then returned to Dr. Lander by the Debtor on April 17, 2018, thirty-six days later.

**C.    The Second Claim for Relief Should Be Dismissed.**

To state a claim for relief under Section 3439.04(a)(2) and 3439.05 of the California Civil Code the Trustee must allege that the transfer was made for less than "reasonably equivalent value". As explained above, and as reflected in Exhibit "A" to the Lander Declaration, $120,000 was paid to the Debtor on March 12, 2018, and this exact sum was repaid on April 17, 2018. The repayment of an antecedent debt in the exact amount of that debt within thirty days is not a transfer for less than reasonably equivalent value. In re Prejean, 994 F.2d 706, 707 (9th Cir. 1993)("It is undisputed that satisfaction of an antecedent debt that is not time-barred constitutes "value" for purposes of the CFTA. See Cal.Civ.Code § 3439.03"). If the Trustee disputes the rather obvious relationship

9

between these matching inflows and outflows of cash he should say so. Otherwise, this claim for relief should be dismissed.

### D. The Third and Fourth Claim For Relief Should Be Dismissed.

The Third and Fourth Claims for Relief are based upon 11 U.S.C. § 551 and 11 U.S.C. § 502(d) respectively. If the First and Second Claims for Relief are dismissed, then these claims, which are dependent on the former claims, fail as well.

### E. The Fifth Claim For Relief Should Be Dismissed.

The Fourth Claim for Relief states:

> 56. The Defendant received a benefit through the Transfer and DOT Transfer, and Defendant's retention of the Transfer and DOT Transfer and the value of the Transfer and DOT Transfer, results in unjust retention of said benefit at the Estate's expense.

(¶ 56, Complaint). The Complaint does not refer to a "DOT Transfer" and there are six defendants named in the Complaint. Accordingly, this claim does not state a claim for relief.

## IV    CONCLUSION

The Transfer made to Dr. Lander was for $120,000. The Trustee is in possession of a bank record confirming that a payment in the exact amount was remitted to the Debtor thirty-six days earlier. If the Trustee contends he has evidence that these two identical sums are unrelated, he should advise the Court and Dr. Lander and file a complaint that complies with Rule 9(b). Otherwise, he should dismiss the Complaint against Dr. Lander.

DATED: March 20, 2023
OKEEFE & ASSOCIATES
LAW CORPORATION, P.C.

/s/ Sean A. O'Keefe
By: _____
Sean A. O'Keefe, counsel
to Dr. Elliot Lander

10

## REQUEST FOR A JURY TRIAL

The defendant, Dr. Elliot B. Lander, demands a jury trial on all issues triable by a jury in the above-entitled case.

DATED: March 20, 2023

OKEEFE & ASSOCIATES
LAW CORPORATION, P.C.

By: /s/ Sean A. O'Keefe
_____
Sean A. O'Keefe, counsel
to Dr. Elliot B. Lander

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 26 Executive Park, Suite 250, Irvine, CA 92614.

A true and correct copy of the foregoing document entitled: **DEFENDANT ELLIOT B. LANDER'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); AND DEMAND FOR JURY TRIAL AS TO ANY SURVIVING CLAIMS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On March 20, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On March 20, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, March 20, 2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Sheri Bluebond
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1534
Los Angeles, CA 90012

☒ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 3/20/2023 | Sean A. O'Keefe | /s/ Sean A. O'Keefe |
| *Date* | *Printed Name* | *Signature* |

2

## NEF LIST

- Richard A Marshack (TR)    pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
- Ryan D O'Dea    rodea@shulmanbastian.com, lgauthier@shulmanbastian.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

## MAILING LIST

Asr Development Co
1801 South La Cienega Blvd. Ste. 301
Los Angeles, Ca 90035

Abraham Stuart Rubin
c/o Evan L. Smith, Esq.
Messina & Hankin LLP
24910 Las Brisas Road, Suite 102
Murrieta, CA 92562

Joseph Rubin
715 N. Alpine Dr.
Beverly Hills, CA 90210